IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
July 22, 2003 Session

## STATE OF TENNESSEE v. FLOYD "BUTCH" WEBB

**Direct Appeal from the Circuit Court for Rhea County**
**No. 15551   J. Curtis Smith, Judge**

_____

**No. E2002-01989-CCA-R3-CD**
**February 3, 2004**
_____

JOSEPH M. TIPTON, J., concurring.

I concur in the results reached and most of the reasoning used in the majority opinion. However, I respectfully disagree with its views regarding Kathy Spada's testimony resulting from her review of the victim's purported medical records. I believe that her testimony regarding her review of the records, the basic contents of the records, and her "opinion" based upon her review of the records should have been excluded from the evidence. As the majority opinion notes, the records in question are not part of the record on appeal. The state's comments at trial and Ms. Spada's testimony indicate that the records were ostensibly regarding a physical examination of the victim when she was three years old. The parties stipulated that the records were from either a Dayton doctor or hospital with whom Ms. Spada was not affiliated and for whom she was not a proper custodian of the records.

The defendant had elicited testimony from the victim's mother indicating that the victim, at three or four years of age, had complained about her "bottom" hurting, indicating between her legs. The victim's mother testified that the victim said that a boy named Bo had touched her. The victim was taken to a doctor. As the defendant acknowledges, he was trying to show that the condition of the victim's hymen could have occurred before she met the defendant. Obviously, the purpose of Ms. Spada's testimony was to rebut the defense's claim. That is, the state's goal was to present to the jury evidence that the cleft or scarring found by Ms. Spada was not from the events presented by the defense.

With this background, the state elicited from Ms. Spada that she had reviewed the medical records and agreed with the doctor's assessment. She asked if she should read the records into evidence and the state requested that she paraphrase them. Ms. Spada testified that the records reflected that there was some concern about sexually explicit talk, I assume by the victim, and that the victim's mother took her to a doctor. Ms. Spada stated that the records reflected that the doctor examined the victim's genital area and found it to be within normal limits. She said that the doctor found no trauma or tears. She said that there was no proof of sexual abuse. On redirect examination,

after an extensive cross-examination, Ms. Spada said that what she found in examining the victim could not have happened when the victim was three when she "looked at this other physical, when she was seen by a physician when she was three, that was not alluded to at all."

The majority opinion states that the trial court should not have allowed the contents of the twelve-year-old report into evidence. However, it views the error harmless because it concludes that overwhelming evidence against the defendant exists. Also, it concludes that Ms. Spada was properly allowed to testify pursuant to Rule 703, Tenn. R. Evid., relative to her opinion that the victim had sustained her injuries in the present case after the examination the victim had at age three.

I view the circumstances in this case differently. As for the state's goal to prove that the cleft or scarring did not date back to the victim's prior examination, I believe that the records were not independently admissible because they constituted hearsay. That is, the state had not complied with the requirements for admitting the victim's records into evidence under the business records exception to the hearsay rule of exclusion. The state did not produce a proper custodian of the records or an affidavit of such person attesting that the records were made and kept as required pursuant to rule or statute. See Tenn. R. Evid. 803(6), 902(11); T.C.A. §§ 24-9-101(8), 68-11-401 to -408. Thus, the state could not prove the contents of the records.

However, the state chose a different route which the majority opinion approves under Rule 703, Tenn. R. Evid. The state had Ms. Spada give her "opinion" that the cleft or scarring she found on the victim's hymen did not exist when she was examined at the age of three. I do not believe, though, that her testimony meets the requisite foundations for admissibility under the rule. Rule 703 provides as follows:

### BASIS OF OPINION TESTIMONY BY EXPERTS

The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence. The court shall disallow testimony in the form of an opinion or inference if the underlying facts or data indicate lack of trustworthiness.

Ms. Spada did not assert that unauthenticated records were reasonably relied upon by experts in the particular field. Also, she had no knowledge of the trustworthiness of the records. Without authentication of the records as accepted by experts in the field, Ms. Spada had no means to conclude that the records were what they were purported to be. Moreover, I view her testimony to amount merely to proof of the contents of the former records couched in the form of her "opinion." I do not believe that Rule 703 allows for such circumstances. Although I do not view the evidence as

overwhelming, I agree with the majority opinion's conclusion that the defendant has failed to show that the error affirmatively appears to have affected the results of the trial.

 

 

_____

JOSEPH M. TIPTON, JUDGE